Craig Solomon Ganz (023650)
Joel F. Newell (025296)
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Email: ganzc@ballardspahr.com
Email: newellj@ballardspahr.com
Telephone: 602.798.5400
Facsimile: 602.798.5595

*Attorneys for SCF RC Funding IV LLC*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Comprehensive Interventional Care Centers, PLLC,<br><br>Comprehensive Integrated Care, PLLC,<br><br>Comprehensive Interventional Care, PLLC,<br><br>Debtors.<br><br>This Filing Applies to:<br><br>__ All Debtors<br><br> X  Comprehensive Interventional Care Centers, PLLC<br><br>__ Comprehensive Integrated Care, PLLC<br><br> X  Comprehensive Interventional Care, PLLC | In Proceedings Under Chapter 11<br><br>Case No. 2:25-bk-01225-DPC<br><br>Jointly Administered with:<br><br>Case No.: 2:25-bk-01288-DPC and<br>Case No.: 2:25-bk-01229-EPB |

**MOTION OF SCF RC FUNDING IV, LLC FOR AN ORDER (I) COMPELLING THE IMMEDIATE PAYMENT OF POST-PETITION RENT PURSUANT TO 11 U.S.C. § 365(D)(3) OR, (II) IN THE ALTERNATIVE, COMPELLING THE REJECTION OF THE MASTER LEASE, MODIFYING THE AUTOMATIC STAY TO ALLOW LANDLORD TO EXERCISE ITS STATE LAW RIGHTS AND REMEDIES; AND ALLOWING AND DIRECTING THE IMMEDIATE PAYMENT OF ITS ADMINISTRATIVE EXPENSE CLAIM**

NG-58S8J20W #4896-7496-0933 v2

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

SCF RC Funding IV LLC ("SCF" or "Landlord"), by and through its undersigned counsel, hereby moves this Court for an order: (i) compelling the payment of all post-petition rental amounts due and owing under the Lease (defined below), pursuant to Section 365(d)(3) of title 11 of the United States Code (as amended, the "Bankruptcy Code"),[1] or, (ii) in the alternative, modifying the automatic stay, pursuant to 11 U.S.C. § 362(d), to allow SCF to pursue its state-law rights and remedies, and allowing and directing the immediate payment of SCF's administrative expense claim pursuant to 11 U.S.C. §§ 365(d)(3) and 503(b)(1) (the "Motion").

## BACKGROUND

1. On February 13, 2025 (the "Petition Date"), Debtor(s) Comprehensive Interventional Care Centers PLLC ("CICC PLLC"), Case No. 2:25-bk-01225-DPC; Comprehensive Interventional Care PLLC ("CIC PLLC"), Case No. 2:25-bk-01229-DPC; and, Comprehensive Integrated Care, PLLC, Case No. 2:25-bk-01228-DPC (collectively the "Debtor") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Arizona. On or about February 18, 2025, the Court entered an Order permitting the joint administration of these cases. (Dkt. 9).

2. Debtor continues to operate its business and manage its properties as debtor and debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Case.

3. SCF, as Landlord, and CIC PLLC and CICC PLLC, as Tenants, entered into that certain Lease Agreement dated February 27, 2020 for properties located at 2301 N. 4th Street, Flagstaff, AZ ("Flagstaff Property"); and, 6958 SW Varns Street, Tigard Oregon ("Oregon Property"), collectively the Flagstaff Property and Oregon Property shall be referred to as the "Property."

---

[1] Unless otherwise specified, all statutory references to a "Section" are to the Bankruptcy Code.

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

4. On October 31, 2021, SCF, CIC PLLC, and CICC PLLC executed that certain First Amendment to Lease Agreement dated October 31, 2021 (together with the Lease Agreement, the "Lease"). A copy of the Lease is attached hereto as **Exhibit "A."**

5. SCF, and, CIC PLLC and CICC PLLC, entered into that certain Construction and Disbursement Agreement effective February 27, 2020 for the Flagstaff Property. SCF, CIC PLLC, and CICC PLLC executed that certain Amendment to Construction and Disbursement Agreement on October 31, 2021 (collectively the "Flagstaff Disbursement Agreement"). A copy of the Flagstaff Disbursement Agreement is attached hereto as **Exhibit "B."**

6. SCF, and, CIC PLLC and CICC PLLC, entered into that certain Construction and Disbursement Agreement effective February 27, 2020 for the Oregon Property. SCF, CIC PLLC, and CICC PLLC executed that certain Amendment to Construction and Disbursement Agreement on October 31, 2021 (collectively the "Oregon Disbursement Agreement"). A copy of the Oregon Disbursement Agreement is attached hereto as **Exhibit "C."**

7. Among other things, the Lease requires that Tenants pay Minimum Rent (as defined in the Lease) on or before the first day of the month. *See* Exhibit "A," §6. The Lease also requires Tenants to pay Additional Rental (as defined in the Lease), which includes all sums of money required to be paid by Tenants not specifically referred to as Minimum Rent, such as including but not limited to real estate taxes. *See* Exhibit "A," §7. Collectively, the Minimum Rent and Additional Rent are referred to in the Lease as "Rent."

8. Pre-Petition, CIC PLLC and CICC PLLC failed to remit Rent due on December 1, 2024 through February 12, 2025 ("Pre-Petition Rent"). The Pre-Petition Rent amount due from the Debtor includes:

| Month | Minimum Rent | Sales Tax |
|---|---|---|
| December 2024 | $48,662.99 | $2,094.58 |
| January 2025 | $49,892.35 | $865.22 |
| Feb. 1-12, 2025 | $21,382.44 | 370.81 |
| | **Total:** | **$123,268.39** |

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

9. CIC PLLC and CICC PLLC have not remitted Minimum Rent and Additional Rent for the time period of February 13, 2025 through February 28, 2025 ("Stub Rent"). The Stub Rent is $29,004.32 ($28,509.91 – Minimum Rent + $882.494.41 – Sales Tax).

10. CIC PLLC and CICC PLLC have not remitted Minimum Rent and Additional Rent due on March 1, 2025, as well as accrued late fees and default interest ("Post-Petition Rent"). The Post-Petition Rent due for March is $51,772.71 ($50,890.19 Minimum Rent + $882.52 Sales Tax).

11. SCF is also informed that the outstanding property taxes due for 2024 is $65,542.36. The payment of real property taxes falls within Additional Rent.

## RELIEF REQUESTED

12. By this Motion, SCF respectfully requests the entry of an order by this Court compelling the immediate payment of the Post-Petition Rent due and owing under the Lease, pursuant to Section 365(d)(3) of Bankruptcy Code as well as the immediate allowance and payment of Stub Rent pursuant to Section 503(b)(1), in the aggregate sum of $80,777.03. SCF should also be awarded its attorneys' fees, which are estimated to be at least $5,000.00 in connection with this Motion and compelling the payment of post-petition lease obligations, as authorized by the terms of the parties' Lease.

13. In the alternative, if the Debtors fail to pay the unpaid post-petition rent amounts, SCF respectfully requests an Order compelling the rejection of the Lease, modifying the automatic stay, pursuant to 11 U.S.C. § 362(d), to allow SCF to pursue its state law rights and remedies; and allowing and directing the immediate payment of SCF's administrative expense claim for the Post-Petition Rent pursuant to 11 U.S.C. §§ and 365(d)(3) and 503(b)(1).

**I.  Landlord is Entitled to the Immediate Payment of Post-Petition Rent Pursuant to 11 U.S.C. § 365(d)(3) of the Bankruptcy Code.**

  **A.  *Section 365(d)(3) Requires the Debtor(s) to Perform its Obligations Under the Lease.***

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

14. The Bankruptcy Code affords lessors of nonresidential real property specific protections with regard to post-petition, pre-rejection rental obligations. Bankruptcy Code section 365(d)(3) provides, in pertinent part, as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) if this title.

The plain language of Section 365(d)(3) and applicable case law require Debtor's immediate payment of the post-petition, pre-rejection obligations under the Lease. "The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms." *CenterPoint Properties v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp*.), 268 F.3d 205, 209 (3rd Cir. 2001); *see also Augusta Mall P'ship v. Twigland Fashions, Inc. (In re Twigland Fashions*), 198 B.R. 199, 200 (W.D. Tex. 1996), citing *In re Pac.-Atl. Trading Co*., 27 F.3d 401, 404 (9th Cir. 1994) ("The plain and unconditional language of the statute demands that a trustee promptly pay the full amount of rent due under a nonresidential real property lease during the 60-day [now 120-day] period pending assumption or rejection [of the lease]."); *In re Appletree Markets, Inc*., 139 B.R. 417, 421 (Bankr. S.D. Tex. 1992) ("The plain language of the statute is clear. Section 365(d)(3) provides for timely performance of all obligations of the debtor from and after the order for relief."); *In re Mr. Gatti's, Inc.*, 164 B.R. 929, 933 (Bankr. W.D. Tex. 1994). "The plain language of § 365(d)(3) is clear: the debtor-tenant must fully and timely perform its obligations under the lease." "Both the text and the intent of § 365(d)(3) are clear: commercial real property lessees must continue to perform after filing for bankruptcy." *In re CEC Entm't, Inc*., 625 B.R. 344, 352 (Bankr. S.D. Tex. 2020).[2]

---

[2] "No notice or hearing is required, the [lease] obligations are simply required to be met in a timely fashion." *In re C.Q., LLC*, 343 B.R. 915, 917 (Bankr. W.D. Wisc. 2005). *Accord, In re Valley Media, Inc*., 290 B.R. 73, 77 (Bankr. D. Del. 2003) (In rejecting argument that a landlord must file a request for payment of an administrative expense claim for unpaid post-petition rent, the bankruptcy court concluded: "There is no suggestion of any such filing requirement in § 365(d)(3). Indeed, just the opposite is suggested. The timely payment of the obligation is

4

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

15. "Unlike other creditors who could simply choose to stop doing business with the debtor post-petition, landlords were stuck with the debtor while it decided whether to assume or reject the lease, during which time the debtor was not paying rent and the landlord could not re-let the space." *In re Imperial Beverage Group, LLC*, 457 B.R. 490, 497 (Bankr. N.D. Tex. 2011). Congress specifically chose to protect real property lessors because "[u]nlike other creditors who could simply choose to stop doing business with the debtor post-petition, landlords were stuck with the debtor while it decided whether to assume or reject the lease, during which time the debtor was not paying rent and the landlord could not re-let the space." *Id.* Thus, the clear intent of intent of Section 365(d)(3) is "to assure that landlords not be compelled to furnish current services without being compensated on a current basis." *In re Food City, Inc.*, 95 B.R. 451, 455 (Bankr. W.D. Tex. 1988).

16. Accordingly, Section 365(d)(3) requires a debtor to pay lease obligations as they come due, thereby balancing the debtor's decision to retain the leasehold, and the captive landlord's inability to evict the debtor during the Section 365(d)(4) period. *See Montgomery Ward*, 268 F.3d at 209 (holding that Congress, in adopting § 365(d)(3), intended a debtor to perform all leasehold obligations as they came due); *El Paso Props. Corp. v. Gonzalez (In re Furr's Supermarkets, Inc.)*, 283 B.R. 60, 69 (B.A.P. 10th Cir. 2002).

17. Contrary to Bankruptcy Code section 365(d)(3) and applicable case law, SCF is plainly not receiving "current payment" for the "current services" which it is being compelled to provide pending Debtor's decision to assume or reject the unexpired Lease. Since the Petition Date, Debtor has made zero payments of the Minimum Rent and Additional under the Lease. *See* Exhibit A, §§ 6 and 7.

18. As a result, the Debtor must timely perform all post-petition obligations owing and due under the Lease, including the timely payment of the Post-Petition Rent. There is no need for a hearing to determine whether the amount of money owed under the

---

dictated by statute.")

terms of a lease is reasonable, the Debtor's obligation to make payment is as of the time the rent obligation accrues, and not at the time, other administrative expenses are paid pursuant to a Chapter 11 plan. *See, e.g., In re Barrister of Del., Ltd.*, 49 B.R. 446, 447 (Bankr. D. Del. 1985); *Norritech v. Geonex Corp.*, 204 B.R. 684 (D. Md. 1997); *In re Pac.-Atl. Trading Co.*, 27 F.3d 401, 403 (9th Cir. 1994); *In re Rich's Dept. Stores, Inc.*, 209 B.R. 810 (Bankr. D. Mass. 1997); *In re Amber's Stores, Inc.*, 193 B.R. 819 (Bankr. N.D. Tex. 1996).

19. It is also well established that "counterparties are entitled to an administrative claim when obligations under § 365(d)(5) are not performed." *In re Erin Energy Corp.*, No. 18-32106, 2024 WL 3616731, at *4 (Bankr. S.D. Tex. July 31, 2024) (citing *In re Bella Logistics LLC*, 583 B.R. 674, 677–82 (Bankr. W.D. Tex. 2018). As a result, "a lessor has an administrative expense claim for unpaid post-petition lease obligations that occur before the lease is rejected, either by the trustee, or due to the time limitations of § 365(d)(4), and a landlord need not establish its claim for administrative status under Section 503(b)(1)(A)." *Amber's Stores*, *supra*, 193 B.R. at 825. Hence, "[i]n order to qualify as an 'actual and necessary cost under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the Trustee that benefitted the estate." *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001) (internal citation omitted). The fact that Debtor occupied the leasehold is sufficient to establish that payment for such occupancy is a necessary and actual expense of preserving the Debtor's estate. *In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 614 (Bankr. D. Del. 2008) (citing *Zagata Fabricators*, 893 F.2d at 627).

20. However, merely declaring the rent to be an administrative expense is insufficient in that administrative expenses ordinarily do not have to be paid until the end of a case. *See In re Stone Barn Manhattan, LLC*, 398 B.R. 359 (Bankr. S.D.N.Y. 2008). Requiring SCF to wait for the payment of Stub Rent and Post-Petition Rent would be inconsistent with the reasons for the enactment of Section 365(d)(3), particularly if there is

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

administrative insolvency, which is probable even in the early stages of these jointly administered cases.

21. Simply put, Debtor's rent obligations to SCF have not changed merely "by happenstance of bankruptcy." The only valid basis for failing to pay the post-petition rent amounts is administrative insolvency. If Debtor is administratively insolvent, this Court should consider conversion of this case to Chapter 7 or appointment of a Chapter 11 Trustee or examiner. Indeed, it has been observed that "[a] failure to pay rent may conceal operational losses or an ongoing dissipation of estate assets." *In re J.T. Rapps, Inc.*, 225 B.R. 257, 264 (Bankr. D. Mass. 1998). It is believed that the Debtor is not subject to any liens on its daily revenue. Thus, to date neither SCF nor any of the creditors have been privy to any form of budget. Presumptively the Debtor's business operations continue, yet no indication of where or how their revenue is being utilized is available. Debtor has no valid excuse for failing to pay the Stub Rent and Post-Petition Rent to date. It appears the Debtor is simply buying time to avoid paying rent to SCF despite still occupying and using the premises, which inevitably incurs more costs related to such use at the expense of SCF. This Court should not allow Debtor to take advantage of the SCF's Lease while Debtor stands idly by, failing to pay Post-Petition rent pending the assumption of the lease.

22. To avoid such a result, many courts "have found § 503(b)(1) to be superseded by § 365(d)(3); to hold otherwise would flout the intent of Congress in that the landlord would still be forced to provide current services while awaiting an evidentiary hearing to determine the actual amount the debtor owed it." *Stone Barn Manhattan*, *supra*, 398 B.R. at 362 (citing *In re P.J. Clarke's Restaurant Corp.*, 265 B.R. 292, 397 (Bankr. S.D.N.Y. 2001); *In re Wingspread Corp.*, 116 B.R. 915, 926 (Bankr. S.D.N.Y. 1990).

23. There is no dispute that the Debtor has not complied with Section 365(d)(3), and that it has failed to pay SCF the Post-Petition Rent that is due and owing on a current basis under the Lease. This is the involuntary creditor situation that Section 365(d)(3) was intended to prevent. SCF respectfully requests an order compelling the Debtor not only to make immediate payment of the post-petition rental obligations representing the Post-

Petition Rent, that is presently due and owing to SCF, but also to make all future post-petition rental obligations that will become due and owing to SCF, pursuant to Section 365(d)(3) through the date of any assumption or rejection of the Lease.

### B. Landlord is Entitled To Recover Late Fees and Interest, and Attorneys' Fees Incurred In Connection With This Motion.

24. Additionally, pursuant to the Lease, SCF is entitled to payment for any late charges and interest that has accrued in addition to its attorneys' fees it has incurred (and will continue to incur) in connection with this Motion. *See* Exhibit A, § 7.

25. The language of the Lease provides SCF with a right to payment of attorney's fees when it becomes necessary to take legal action in connection with the Debtor's default or breach. *See* Exhibit A, § 23(m). Courts often enforce a landlord's contractual right to collect attorney's fees under the circumstances that led to the filing of this Motion. *See, e.g.*, *Travelers Cas. & Su. Co. of Am. V. Pacific Gas and El. Co.*, 549 U.S. 443, 448-49 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allowing attorneys' fees"); *In re Crown Books Corp.*, 269 B.R. 12 (Bankr. D. Del. 2001) (holding that when lessors commence legal proceedings to enforce their rights under leases, within the meaning of attorney's fees clauses in leases, lessors were entitled to be compensated for legal fees which they reasonably incurred in prosecuting their objections); *In re Beltway Medical, Inc.*, 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) ("Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs the legal fees seeking to obtain payment, it follows that the attorney's fees, if authorized under the lease and linked to the enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation.").

26. Accordingly, the Post-Petition Rent is required to be paid pursuant to Section 365(d)(3), and SCF respectfully requests an order compelling the Debtor to immediately pay the Post-Petition Rent, plus interest, late charges and attorney's fees as provided for in the Lease associated with preparing and prosecuting this Motion. These attorneys' fees are

estimated to be in excess of $5,000.00 and will only increase through the hearing on this Motion.

### C. *Landlord Is Entitled To Adequate Protection in the Form of Immediate Payment.*

27. Real property lessors are entitled to seek adequate protection. *See, e.g., Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1286-87 (5th Cir. 1986) (recognizing landlord's right to adequate protection); *P.J. Clarke's Restaurant, supra*, 265 B.R. at 404 (noting that a "landlord's right to adequate protection seems to follow clearly from the language of §363(e) . . . ."); *In re Ernst Home Ctr., Inc.*, 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997) (real property lessors have the right to request adequate protection). Moreover, Section 363(p)(1) places the burden of proving adequate protection on the Debtor.[3] Bankruptcy Code section 363(e) provides, in pertinent part, that:

> [A]t any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

28. Critically, the mere allowance of an administrative priority claim for unpaid post-petition rent and charges **cannot constitute adequate protection** under the plain language of Section 361(3). 11 U.S.C. § 361(3) ("When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by granting such other relief, **other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense** . . . ." (emphasis added)). This is especially prescient where Debtor failed to include any rent payments over the 9-week period covered in the budget

---

[3] "In any hearing under this section – (1) the trustee [or debtor-in-possession] has the burden of proof on the issue of adequate protection . . . ." 11 U.S.C. § 363(p)(1).

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

and instead sought to pay other creditors in full as "critical vendors". *See Attorneys Office Management*, *supra*, 29 B.R. at 99 ("In § 361(3) it is made clear that an administrative claim under § 503(b)(1) in itself will not constitute adequate protection."). Merely budgeting for accruing Post-Petition rent is not enough.

29. Under the circumstances, the only form of adequate protection that would even approach acceptability would be timely cash payments equal to the amount of rent and charges accruing under the Lease for the use of the Property between the Petition Date and prior to the effective date of any assumption or rejection. This Court should order Debtor to make timely cash payments of accruing post-petition, pre-rejection rent and charges, providing for expedited relief in the event timely payments are not made as required by Bankruptcy Code section 365(d)(3).

## II. In the Alternative, Debtor Should be Compelled to Reject the Lease and Landlord Should be Granted Relief from the Automatic Stay and an Administrative Expense Claim.

### A. If the Debtor is unable or Unwilling to Pay its Statutorily Required Rent Obligations, the Court Should Enter an Order Rejecting the Lease.

30. Section 365(d)(2) provides, in relevant part, as follows:

In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, ***on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease***.

11 U.S.C. § 365(d)(2) (emphasis added).

31. Courts have also clarified "that the breathing space afforded to the debtor for assumption or rejection of executory contracts is not without limits. Under § 365(d)(2), any party to an executory contract may request that the court fix a time within which the debtor must assume or reject an executory contract." *In re Enron Corp.*, 279 B.R. 695, 702 (Bankr.

10

S.D.N.Y. 2002); *Calet Hirsch & Ferell, Inc. v. Microvideo Learning Sys. (In re Microvideo Learning Sys.)*, 254 B.R. 90, 93 (Bankr. S.D.N.Y.) (remedies available under section 365(d)(3) include relief from the automatic stay); *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 628 (3rd Cir. 1990) (granting relief from stay based on failure to pay post-petition rent).

32. Landlords are entitled to request an order compelling rejection where, as here, the Debtor has defaulted in post-petition payments or there is "some manifest unfairness" in forcing the non-debtor to wait while the debtor decides to assume or reject. *In re Pac. Gas & Elec. Co.*, 2004 U.S. Dist. LEXIS 22023 (Bankr. D. Cal., 2004) (finding that a non-debtor party should seek relief under section 365(d)(2) based on concerns of the debtor's financial viability to continue performing); *In re Coast Trading Co. Inc.*, 26 B.R. 737, 741 (Bankr. D. Or. 1982) (non-debtor party to an executory contract may not engage in post-petition withholding of performance, but may only either seek relief from automatic stay or request the court to fix a time which the debtor must assume or reject under section 365); *see also Skeen v. Denver Coca-Cola Bottling Co. (In re Feyline Presents, Inc.)*, 81 B.R. 623, 626 (Bankr. D. Colo. 1988); *Calet Hirsch & Ferell, Inc. v. Microvideo Learning Sys. (In re Microvideo Learning Sys.)*, 254 B.R. 90, 93 (Bankr. S.D.N.Y.) (remedies available under section 365(d)(3) include relief from the automatic stay); *Zagata Fabricators, Inc. v. Superior Air Prods.*, 893 F.2d 624, 628 (3rd Cir. 1990) (granting relief from stay based on failure to pay post-petition rent).

33. The Court has the authority to issue an order deeming the Lease rejected pursuant to Section 105(a). *See* 11 U.S.C. § 105(a); *Walls v. Wells Fargo Bank, N.A.*, 255 B.R. 38, 44 (E.D. Cal. 2000); *see also Matter of Zale Corp.*, 62 F.3d 745, 759-760 (5th Cir. 1995) (citing 11 U.S.C. § 105(a)) (stating that "section 105 provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [the Bankruptcy Code]."). In such a circumstance, the Court also has the authority to order the surrender of the Property. *Anderson v. Elm Inn, Inc. (In re Elm Inn, Inc.)*, 942 F.2d 630, 634 (9th Cir. 1991). In light of the failure of Debtor to meet its

obligations under the Lease, it is appropriate and equitable under the circumstances to deem the Lease rejected for the Debtor's failure to comply with Section 365(d)(3).

34. Here, Debtor failed to pay approximately $123,268.39 in Rent prior to its bankruptcy filing. Now, in defiance of the Bankruptcy Code, Debtor has refused (or failed) to pay Post-Petition Rent. It would be manifestly unfair under the circumstances to allow Debtor to continue occupying the Property without paying rent.

35. Section 362(d) provides, in relevant part, as follows:

> On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay:
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).

36. The Bankruptcy Code does not define "cause," however, courts have found "cause" existed to grant lessors relief from the automatic stay to pursue their rights under rejected leases and/or applicable state law. *See In re Seven Stars Restaurant, Inc.*, 122 B.R. 213, 218 (Bankr. S.D.N.Y. 1990) (granting landlord stay relief to pursue state court action for eviction); *see also In re The Inn at Longshore, Inc.*, 32 B.R. 942, 946 (Bankr. D. Conn. 1983) (granting relief from the automatic stay for "cause" under section 362(d) to permit lessor to commence and prosecute its rights under the subject lease).

37. As a result of the Debtor's payment default under the Lease, "cause" exists to terminate the automatic stay imposed by Section 362(a) to permit SCF to exercise its rights pursuant to the terms of the Lease to regain possession of the leased premises in accordance with the terms of the Lease and applicable state law.

38. Absent prompt compensation for post-petition use and occupancy of the Property, SCF should not be forced to subsidize the Debtor's Chapter 11 case with what amounts to an involuntary, interest-free loan.

12
Case 2:25-bk-01225-DPC    Doc 70    Filed 03/20/25    Entered 03/20/25 16:45:54    Desc
Main Document    Page 13 of 17

39. Accordingly, SCF respectfully requests an order under Section 365(d)(1) to terminate the stay in the event that the Debtor fails to make the unpaid post-petition rent payments described *supra*, or is unwilling to voluntarily agree to surrender and relinquish control of the Property in accordance with the rejection provisions of the Bankruptcy Code. Any such surrender and rejection of the Lease by the Debtor must be an unequivocal relinquishment of control, in writing, and requires that the Debtor return the Property to SCF in accordance with the terms and conditions of the Lease, including but not limited to, in "broom clean" condition.

**C. Landlord is Entitled to an Allowed Administrative Expense Claim for Post-Petition Rent, including the Stub Rent under 11 U.S.C. § 503(b)(1).**

40. To the extent the Post-Petition Rent remains unpaid following a hearing on the merits of this Motion as a result of the Debtor's inability or refusal to comply with any payment order entered by this Court, SCF respectfully requests that it be granted an allowed administrative priority claim for the Post-Petition Rent and Stub Rent, in the total amount of $80,777.03 plus default interest, late fees, and attorneys' fees, to be paid immediately upon funds becoming available to the estate to pay such claim.

41. The Stub Rent, in addition to the Post-Petition Rent, constitutes an allowable administrative expense pursuant to 11 U.S.C. § 503(b), which provides, in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses . . . including -- (1)(A) the actual, necessary costs and expenses of preserving the estate . . . .

11 U.S.C. § 503(b)(1)(A). *See also Goody's*, *supra*, 392 B.R. at 609

42. "The amount of the claim is the fair market value of the premises, and that value is presumed to be the rent due under the lease unless evidence is presented to the contrary." *Goody's*, 392 B.R. at 607. *See also Garden Ridge*, 321 B.R. 669, 676-77 (Bankr. D. Del. 2005); *In re DVI, Inc.*, 308 B.R. 703, 708 (Bankr. D. Del. 2004); *In re ZB Co., Inc.*, 302 B.R. 316, 319 (Bankr. D. Del. 2002); *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002). Thus, "the fair market rental value, in turn, "sets the

Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400

applicable rate of administrative expense recovery in the post-rejection period." *Home Interiors & Gifts, Inc.*, No. 08–31961, 2008 WL 4772102, at *11 (Bankr. N.D. Tex. Oct. 9, 2008) (citing DVI, *supra*, 308 B.R. at 708).

43. Here, SCF is entitled to an allowed claim in the amount of the Post-Petition Rent—the Stub Rent as well as the Post-Petition Rent—as an administrative expense claim pursuant to sections 503(b)(1)(A) of the Bankruptcy Code.

44. SCF also respectfully requests that the Post-Petition Rent be paid immediately. It is well-settled that the decision whether to order immediate payment of Section 503(b)(1) administrative claims is within the sound discretion of the Court. *See, e.g., In re HQ Global Holdings*, 282 B.R. at 173 (internal citations omitted); *In re UTEX Comm. Corp.*, 457 B.R. 459, 567 (Bankr. W.D. Tex. 2011) (recognizing that "the time of payment of administrative expenses is within the discretion of the bankruptcy court."). As the court explained in determining the timing of the payment of an administrative expense claim in *Global Holdings*, "one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to the debtor's assets." *Global Holdings*, 282 B.R. at 173; *see also Garden Ridge*, 321 B.R. at 677 ("In determining the time of [an administrative expense] payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors.").

45. Here, the delay in the payment of the Post-Petition Rent, including the Stub Rent, will substantially prejudice SCF. Debtor has not been paying its rent in full—a clear indication that there may not be enough funds to satisfy all administrative claims, including the Post-Petition Rent of SCF. As noted at the Initial Status Hearing, creditors will not be privy to Debtor's operating reports for the "stub period" until March 31, 2025 and the March operating report will not be filed until April 21, 2025. Thus, as of the filing of this Motion it is unclear whether the Debtor is (i) financially able to timely remit Post-Petition Rent to SCF or (ii) whether the Debtor has utilize funds post-petition that decreases the likelihood of Debtor being able to remit payment. Thus, the probability that Post-Petition

Rent will be paid is being eroded with the passage of time, thereby justifying the immediate payment of the Post-Petition Rent and Stub Rent owed to SCF.

## **CONCLUSION**

46. SCF respectfully requests the entry of an order, (A) directing the Debtor to (i) pay all outstanding post-petition rent and obligations owing under the Lease, including Stub Rent as an administrative expense within three business days of entry of such order, (ii) perform all post-petition obligations under the Lease going forward unless and until the Lease is rejected and the Property surrendered, (iii) award to SCF their reasonable attorneys' fees and costs incurred to enforce their rights under the Lease and the Bankruptcy Code; or (B) in the alternative, (i) deem the Lease rejected and order surrender of the Property, (ii) granting SCF relief from the automatic stay to pursue their state law rights and remedies, and (iii) and award SCF an administrative expense claim for Post-Petition Rent and direct immediate payment thereof; and grant such further relief as is just and proper.

DATED March 20, 2025.

BALLARD SPAHR LLP

By: */s/ Joel F. Newell*
Craig S. Ganz
Joel F. Newell
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
*Attorneys for SCF RC Funding IV LLC*

## CERTIFICATE OF SERVICE

I certify that on March 20, 2025, I electronically transmitted a PDF version of this document to the Office of the Clerk of Court, using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to all CM/ECF registrants listed for this matter.

By: */s/ Nizza Jane Amphlett*